IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 3, 2008

Charles R. Fulbruge III
Clerk

No. 07-60653

Summary Calendar

ANTHONY JARED BRANTON, Anthony Jared Branton, Individually, and on
behalf of the wrongful death beneficiaries of Jerry Branton, deceased

Plaintiff-Appellee

v.

CITY OF MOSS POINT; BRANDON ASHLEY; MARK MEISELBACH

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:05-CV-338

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Brandon Ashley and Mark Meiselbach (collectively, "Appellants") appeal
the district court's denial of their motion for summary judgment on the basis of
qualified immunity. Appellants are police officers in the City of Moss Point
("City"), who worked at the Moss Point, Mississippi Jail on the night that Jerry
Branton ("Branton"), a detainee, committed suicide. Anthony Branton

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

("Appellee"), Branton's son, filed suit against Appellants, the City of Moss Point, and other police officers, asserting Eighth and Fourteenth Amendment claims along with various state law claims. For the reasons below, we REVERSE the district court's denial and direct the district court to enter summary judgment in Appellants' favor.

I.

On June 10, 2004, Officer Scott Renfro arrested Branton on suspicion of drunk driving and transported Branton to the Moss Point Police Department. When Branton arrived at the police department, he was given an Intoxilyzer test, which showed that Branton's breath alcohol content was 0.203, more than twice the legal limit. Branton was issued citations for driving under the influence ("DUI") and careless driving. When booking Branton, Renfro asked him questions on the police department's computer-based Booking Medical Sheet. One of these questions was whether Branton had ever attempted suicide or was thinking about committing suicide. Branton answered, "No," which Renfro recorded on the form.

Soon after learning that he would be issued a citation for DUI, Branton became violent. Branton told Renfro that "he would lose his job, home, and everything." Branton then proceeded to punch a hole in a wall and started a fight with Renfro. A radio dispatch requested that available officers go to the jail to assist restraining Branton. Ashley arrived at the jail shortly afterward and helped Renfro handcuff Branton. Meiselbach also responded to the call, but, when he arrived, he found that other officers had already subdued Branton. While Branton was handcuffed in the hall of the police department, he cried that "his life was going to be over and that [the officer] might as well shoot him."

Appellants subsequently escorted Branton to the designated cell for intoxicated and combative prisoners at the Moss Point Jail. Appellants left

Branton alone in the cell.  No one conducted a jail check on Branton until more than two hours later when Ashley discovered that Branton had hung himself using a bed sheet.

In 2005, Appellee brought this case against the City, Michael Ricks, the chief of police, and unnamed officers.  In 2006, Appellee amended his complaint and included Renfro and Appellants as defendants.  Appellee, however, failed to serve both Renfro and Ricks.  In 2007, Appellants and the City moved for summary judgment.  One of Appellants' arguments was that they were entitled to qualified immunity because there was no constitutional violation.  The district court granted the City and Appellants' motion as to Appellee's Eight Amendment claim and state claims.  Branton v. City of Moss Point, 503 F. Supp. 2d 809, 813 (S.D. Miss. 2007).  The district court, however, denied the motion as to Appellee's Fourteenth Amendment claim. Id. at 811-12.

## II.

"Appeals from district court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, when based on an issue of law." Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir. 1996).  But courts of appeals do not have jurisdiction to review a district court's order denying qualified immunity if the basis of the order is that there was a genuine dispute as to whether a particular fact occurred.  Id. at 803.  Therefore, here, we must accept the plaintiff's version of the facts as true and "review de novo only the purely legal question of whether 'the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on [that] given set of facts.'" Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006) (quoting Kinney v. Weaver, 367 F.3d 337, 347 (5th Cir. 2004) (en banc)).

III.

Government officials who have violated a plaintiff's constitutional rights are nonetheless entitled to qualified immunity if their conduct is objectively reasonable. Zarnow v. City of Wichita Falls, 500 F.3d 401, 408 (5th Cir. 2007). "To determine whether an official is entitled to qualified immunity, we must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Jacobs v. W. Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Anderson v. Creighton, 483 U.S. 635, 638 (1987) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Appellee contends that Appellants violated Branton's Fourteenth Amendment rights. Under the Fourteenth Amendment, jail officials must adequately protect pre-trial detainees from their known suicidal impulses. See Hare v. City of Corinth, 74 F.2d 633, 650 (5th Cir. 1996) (en banc). Jail officials violate this constitutional right if "they had actual knowledge of the substantial risk of suicide and responded with deliberate indifference." Id. (emphasis added).

We find that Appellee has not presented sufficient evidence demonstrating that Appellants violated Branton's Fourteenth Amendment rights. In asserting that Appellants had actual knowledge of a substantial risk that Branton would commit suicide, Appellee points to the following facts: (1) Branton's fight with the police officers; (2) Branton's comment that his arrest would cause him to "lose his job, home, and everything"; and (3) Branton's comment that "his life was going to be over and that [the officer]

might as well shoot him."[1]  But even accepting these facts as true, we conclude that this evidence does not demonstrate that Appellants had actual knowledge of a substantial risk of suicide.  People who are violent to others often are not violent to themselves.  Therefore, unsurprisingly, courts have not considered a detainee fighting with police officers as evidence that the detainee was suicidal.  See, e.g., Lambert v. City of Dumas, 187 F.3d 931, 934, 937-38 (8th Cir. 1999).  While Branton also made comments indicating that he was exasperated with living, we do not believe that these off-hand, cavalier comments made by someone who was intoxicated so significantly alters the calculus that a reasonable jury could infer that Appellants had actual knowledge that there was a substantial risk that Branton would kill himself.[2]  Accordingly, we find that the district court erred when it denied Appellants' motion for summary judgment.

---

[1] Appellee also argues that Meiselbach admitted that he was aware on the night that Branton committed suicide that Branton posed a threat to himself.  When deposing Meiselbach, Appellee's attorney asked Meiselbach, "Was Mr. Branton that night a threat to himself or others?" Meiselbach answered, "I would have to say, yes, sir, since they already had to fight with him before he got back into the cell–or struggle with him.  I can't say fight."  In an affidavit attached to Appellants' rebuttal brief supporting their motion for summary judgment, Meiselbach stated that he was confused by the compound question and clarified that his answer was directed only to the part of the question of whether Branton posed a threat to others.  Moreover, Meiselbach asserted that he did not know that Branton also posed a threat to himself.  In light of this affidavit and the fact that his deposition answer comports with this clarification, we do not consider Meiselbach's testimony as an admission that he was aware of a substantial risk of suicide.  While Appellee contends that we cannot consider Meiselbach's affidavit because its production was untimely, we do not reach this issue because we find that Appellee waived this argument by failing to raise it before the district court.  See McCloud River R.R. v. Sabine River Forest Prods., Inc., 735 F.2d 879, 882 (5th Cir. 1984).

[2] Appellants urge us to also consider the fact that Branton told Renfro that he had never attempted committing suicide and was not thinking about committing suicide.  The evidence is unclear, however, whether Renfro related this information to Appellants before Branton killed himself.  Because of the procedural posture of the case, we must view the facts in the light most favorable to Appellee.  Therefore, we do not consider this evidence here.

IV.

For the reasons above, we REVERSE the district court's denial of Appellants' motion for summary judgment and direct the district court to enter summary judgment in Appellants' favor.