# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1722

_____

Henry M. Davis

*Plaintiff - Appellant*

v.

Michael White; City of Ferguson, Missouri; John Beaird; Kim Tihen

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2015
Filed: July 28, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

After a fight with police officers at the Ferguson, Missouri, jail, Henry M. Davis brought this civil action. He asserted 42 U.S.C. § 1983 claims against officers Michael White, John Beaird, and Kim Tihen for using excessive force; the City of Ferguson for municipal liability; and Beaird for violating Davis's substantive due process rights by filing false complaints against him. Davis also asserted assault and battery claims against the officers individually under Missouri law. Officer White

suffered a broken nose in the altercation and filed an assault and battery counterclaim. Davis appeals the district court's grant of summary judgment on the excessive force, assault and battery, and municipal liability claims; the grant of judgment as a matter of law dismissing the substantive due process claim against Beaird at the close of Davis's case at the jury trial of that claim and White's counterclaim; and three pretrial procedural rulings regarding the counterclaim, which the court dismissed without prejudice following resolution of the final federal claim. We reverse the district court's grant of summary judgment on the excessive force and assault and battery claims, vacate the dismissal without prejudice of the White counterclaim, and remand. On all other issues, we affirm.

## I. Background

Davis was stopped for speeding and arrested for driving while intoxicated between 3:00 and 4:00 a.m. on September 20, 2009. Officer Beaird transported Davis to the crowded Ferguson jail. When Officer Christopher Pillarick was unable to complete the booking process, Pillarick and Beaird escorted Davis to a cell where the only bunk was occupied. Davis requested a mat from a nearby stack. Pillarick refused because Davis was not cooperating. Davis refused to enter the cell. Beaird or Pillarick radioed for backup. White, Tihen, and Sergeant William Ballard responded. The deposition testimony differs dramatically concerning what happened next. It is undisputed that White pushed Davis into the cell and a short, bloody fight ensued. After it ended, White was treated at a hospital emergency room and eventually required surgery for a broken nose that had bled profusely. Davis was taken to the emergency room, where scalp bleeding was noted but he refused treatment. After his release two days later, Davis went to another emergency room where he was diagnosed with a concussion and a scalp laceration.

There is no video of the incident. The summary judgment record included testimony supporting a claim that White, Beaird, and Tihen each beat or kicked Davis

after he was handcuffed and subdued on the floor of the cell. After the incident, Beaird completed four complaints charging Davis with the offense of "Property Damage" for transferring blood onto the uniforms of Beaird, Tihen, White, and Pillarick. Other charges relating to the traffic stop were also filed. Davis eventually pleaded guilty to careless driving, speeding, non-moving violations, and two counts of Destruction of City Property.

## II. Excessive Force Claims

Davis was a post-arrest detainee at the time of the incident. He alleged that White, Beaird, and Tihen used excessive force in violation of the Fourth Amendment, consistent with our cases holding that the Fourth Amendment's "objective reasonableness" standard applies to excessive-force claims that arise before the end of a detainee's booking process. See, e.g., Hicks v. Norwood, 640 F.3d 839, 842 (8th Cir. 2011). In Kingsley v. Hendrickson, the Supreme Court recently held that the objective reasonableness standard applies to excessive force *due process* claims by pretrial detainees. No. 14-6368, 2015 WL 2473447, at *5-6 (U.S. June 22, 2015). The Court has not decided whether the Fourth Amendment applies to claims by detainees in custody. See id. at *13 (Alito, J., dissenting). But Kingsley confirms that we have properly applied the objective reasonableness standard to these claims.[1]

---

[1]In applying the objective reasonableness standard to detainees in jail, the Court "explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." 2015 WL 2473447, at *7. Kingsley did not overrule cases applying a different, subjective standard to Eighth Amendment excessive force claims by convicted prisoners. Id. at *9; see Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

The district court granted summary judgment dismissing these claims on a narrow ground. "Qualified immunity shields police officers from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006) (quotation omitted). Noting that, until recently, some of our decisions suggested that an excessive force claim will not lie if the plaintiff suffered only "*de minimis* injuries," the court concluded that the police officers were entitled to qualified immunity because, "as unreasonable as it may sound, a reasonable officer could have believed that beating a subdued and compliant Mr. Davis while causing only a concussion, scalp laceration, and bruising with almost no permanent damage did not violate the Constitution." We disagree.

Our prior cases acknowledging that "some minimum level of injury"*may* be required to prove a Fourth Amendment excessive force claim concluded that "the necessary level of injury is actual injury." Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995); accord Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999). Other cases noted, consistent with the proper standard as clarified in Kingsley, 2015 WL 2473447, at \*6-7, that the infliction of only *de minimis* injuries "supports the conclusion that [the officer] did not use excessive force." Wertish, 433 F.3d at 1067; accord Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010); Cook v. City of Bella Villa, 582 F.3d 840, 850 (8th Cir. 2009); cf. Wilkins v. Gaddy, 559 U.S. 34, 36-38 (2010) (same principle applies to Eighth Amendment excessive force claims).

No case acknowledging this issue has held that serious injuries such as "a concussion, scalp laceration, and bruising" can be considered *de minimis* as a matter of law for qualified immunity purposes. See, e.g., Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (three lacerations above eye treated without stitches not *de minimis*); Copeland, 613 F.3d at 881-82 (same for lacerations from handcuffs and chronic knee injury); Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008) (blow to the face not *de minimis*); Lambert, 187 F.3d at 936 (same for "single small cut of the

. . . eyelid and small scrapes of the . . . knee and upper calf"); Dawkins, 50 F.3d at 535 (same for bruises and facial laceration); compare Bishop v. Glazier, 723 F.3d 957, 962 (8th Cir. 2013) (light cut on neck *de minimis*); Wertish, 433 F.3d at 1067 ("relatively minor scrapes and bruises" *de minimis*); Andrews v. Fuoss, 417 F.3d 813, 816, 818 (8th Cir. 2005) (soreness and bad headache *de minimis*). We conclude the district court erred in granting summary judgment on this ground.

Accordingly, we remand for further proceedings on these claims with directions to apply the proper objective reasonableness standard as defined in Graham v. Connor, 490 U.S. 386, 396-97 (1989), Chambers v. Pennycook, 641 F.3d 898, 905-06 (8th Cir. 2011), and, most recently, Kingsley, 2015 WL 2473447, at *5-7. As § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed. See Cross v. Mokwa, 547 F.3d 890, 898 (8th Cir. 2008).

There is one further aspect of this problem that warrants consideration at this time. The decision in Kingsley turned on the Supreme Court's conclusion that the district court erred in defining "excessive force" in its jury instructions. 2015 WL 2473447, at *9-10. But the Court did not overrule its prior decision that, "[i]n determining whether a Fourth Amendment violation occurred we draw all reasonable factual inferences in favor of the jury verdict, but . . . we do not defer to the jury's legal conclusion that those facts violate the Constitution." Muehler v. Mena, 544 U.S. 93, 98 n.1 (2005). None of the four separate opinions in Kingsley mentioned this issue. Both Muehler and Kingsley were 5-4 decisions. Justice Kennedy was the only Justice in both majorities. We see nothing in the Kingsley opinion suggesting that Justice Kennedy has departed from his concurring opinion in Muehler, which we read as treating the question of whether force was constitutionally excessive as an issue of law. 544 U.S. at 103-04. Obviously, this is a question of great significance in deciding issues of qualified immunity and in conducting trials of Fourth Amendment excessive force claims.

## III. Assault and Battery Claims

Davis's state law assault and battery claims arose out of the same altercation. Under Missouri law, "public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." Seiner v. Drenon, 304 F.3d 810, 813 (8th Cir. 2002) (quotation omitted). The district court correctly concluded that a police officer's decision to use force in the performance of his duties is discretionary rather than ministerial. See Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760, 763 (Mo. banc 2006) ("An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.") (quotation omitted); Conway v. St. Louis Cnty., 254 S.W.3d 159, 165 (Mo. App. 2008); Seiner, 304 F.3d at 813. Accordingly, the court concluded, Officers White, Beaird, and Tihen are entitled to official immunity from these claims "because they . . . acted within their discretion [and] caused only *de minimis* injuries."

On appeal, Davis argues the district court erred in granting summary judgment on these claims because the court failed to consider the well-established principle that official immunity "does not apply to discretionary acts done in bad faith or with malice." Blue v. Harrah's North Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. App. 2005), citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986). We agree. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Adolf, 706 S.W.2d at 447 (quotation omitted). "Bad faith" means "conscious wrongdoing" or "breach of a known duty through some ulterior motive." Id. (quotation omitted). That an officer's conduct caused only *de minimis* injuries does not necessarily establish the absence of malice or bad faith as a matter of law. Accordingly, we reverse the grant of summary judgment on this ground.

## IV. The Municipal Liability Claim

Davis seeks to hold the City of Ferguson liable for the three officers' alleged use of excessive force in violation of the Fourth Amendment. The district court concluded, consistent with many Eighth Circuit decisions, that the failure of Davis's excessive force claims against the individual officers foreclosed his claim against the City. See, e.g., Reed v. City of St. Charles, 561 F.3d 788, 792 (8th Cir. 2009). Our decision to reverse the grant of summary judgment in favor of the officers means that this is no longer a sufficient basis to grant summary judgment in favor of the City. We may, however, affirm on any basis supported by the record. Brooks v. Roy, 776 F.3d 957, 959 (8th Cir. 2015).

Davis argues there is sufficient evidence in the summary judgment record to support his claim that the Ferguson Police Department, at the time of this incident, employed a record-keeping system that made it difficult for the police chief to determine how many times a particular officer had been the subject of a citizen's complaint, or how often that officer had employed nonlethal force. Davis relies for this assertion on dubious evidence -- a retired former police chief's failure to recall the Department's system for reporting complaints of nonlethal force. But even assuming that evidence was probative, Davis "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). Where a claim is based upon municipal failure to adopt or follow a needed policy or practice, "a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." Russell v. Hennepin Cnty., 420 F.3d 841, 849 (8th Cir. 2005).

Here, Davis failed to present evidence showing how the Police Department's allegedly poor record keeping directly caused his injury. His reliance on our decision in <u>Parrish v. Luckie</u> is misplaced because in that case the record included "overwhelming evidence to support the jury's finding that North Little Rock police officers operated in a system where reports of physical or sexual assault by officers were discouraged, ignored, or covered up." 963 F.2d 201, 205 (8th Cir. 1992). As there is no such evidence in this case, we affirm the grant of summary judgment dismissing this claim.

## V. The Substantive Due Process Claim

Davis alleged that Beaird violated his substantive due process rights by executing four complaints falsely charging Davis with committing "property damage" by transferring blood onto the uniforms of Beaird, Tihen, White, and Pillarick. At trial, Beaird testified that he saw Davis and White bleeding during the altercation. He saw blood on his uniform and the uniforms of Pillarick and White but was not sure whose blood it was or how it got there. He did not personally observe blood on Tihen's uniform, though he assumed Davis got blood on her when he was struggling in her lap on the floor of the cell. He relied on Sergeant Ballard's instructions in filling out the complaints -- a routine practice -- and had "no problem" doing so because of the blood he personally observed. Ballard testified that he instructed Beaird to fill out the complaints because Ballard had seen blood on all of the officers' uniforms, but he admitted he did not observe how the blood got there. Other witnesses testified that they saw blood on the officers' uniforms and that there was "a lot of blood" at the scene -- even Davis stated that he was "bleeding everywhere." At the close of the plaintiff's evidence, the district court granted Beaird judgment as a matter of law, concluding that the facts, viewed in Davis's favor, did not establish conscience-shocking behavior, an element of a substantive due process claim that is an issue of law for the court. <u>See</u> <u>Akins v. Epperly</u>, 588 F.3d 1178, 1183 (8th Cir. 2009). Reviewing that issue *de novo*, we agree.

"Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to" the conscience-shocking level. White v. Smith, 696 F.3d 740, 757-58 (8th Cir. 2012) (quotation omitted). In an extreme case, a police officer's intentional or reckless failure to investigate before making a complaint can support a substantive due process claim, but neither negligent nor grossly negligent failure to investigate amounts to a constitutional violation. See Amrine v. Brooks, 522 F.3d 823, 833-34 (8th Cir. 2008). Davis's proof at trial did not come close to meeting this rigorous standard. Though the evidence at trial cast some doubt on how many uniforms were splattered with whose blood, Beaird's personal observations and his commanding officer's instructions more than justified signing four complaints, leaving to a prosecuting official whether to bring criminal charges to which Davis ultimately, in part, pleaded guilty. We affirm the district court's grant of judgment dismissing this claim.

## VI. White Counterclaim Issues

White attached his counterclaim for battery to defendants' answer to Davis's initial complaint. See Fed. R. Civ. P. 13(a). Davis filed interrogatories addressing the counterclaim. After a lengthy stay due to state criminal proceedings, Davis filed an amended complaint in February 2013. Defendants' answer did not replead White's counterclaim. White nonetheless answered Davis's interrogatories, Davis moved to compel supplemental responses, the district court granted that motion in part, and White served supplemental responses. At Davis's July 2013 deposition, defense counsel introduced himself as representing "counterclaim plaintiff Mike White," and asked Davis if he understood that he was "named as a defendant in a counterclaim." Davis answered, "Yes." As trial approached, Davis moved the district court to deem the counterclaim abandoned because it was not included in defendants' answer to the amended complaint. He appeals the court's denial of that motion.

In our view, the Federal Rules of Civil Procedure clearly give a district court discretion to grant or deny a motion to deem a counterclaim abandoned in these circumstances. Rule 15(a)(3) provides that, "*[u]nless the court orders otherwise*, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later" (emphasis added). Rule 15(a)(2) provides that the district court "should freely give leave [to amend] when justice so requires." Though Rule 13(a)(1) requires that a compulsory counterclaim be stated in "a pleading," that term was used to clarify that counterclaims could be asserted in pleadings other than "the answer." See 6 Wright, Miller & Kane, Federal Practice and Procedure § 1401, at 6-7 (3d ed. 2010). Rule 1 requires that the Federal Rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Where, as here, plaintiff is given sufficient notice that defendant is continuing to pursue a compulsory counterclaim, and plaintiff would not be unfairly prejudiced if the counterclaim proceeds, an inflexible rule that counterclaims are always abandoned if not repleaded would not serve the interests of justice. See Ground Zero Museum Workshop v. Wilson, 813 F. Supp. 2d 678, 706 (D. Md. 2011).

In this case, the district court adopted an equitable approach in determining whether White's counterclaim should be deemed abandoned, concluding that Davis had lengthy notice White was pursuing the counterclaim, undertook discovery on the counterclaim, and therefore would not be prejudiced by denial of the motion to deem it abandoned. This was the proper approach. There was no abuse of discretion.

After the district court dismissed Davis's federal excessive force claims, Davis moved to dismiss White's counterclaim on the ground that the district court lacked supplemental jurisdiction because it did not share a "common nucleus of operative fact" with Davis's remaining federal claim, the substantive due process claim against Beaird. See generally United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Global NAPs, Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 87-88 (1st Cir.

2010). In the alternative, Davis moved to bifurcate trial of the substantive due process claim and White's counterclaim. Although Davis appealed the district court's denial of both motions, he conceded that the issues would be rendered moot if we reversed the district court's grant of summary judgment to defendants on the Fourth Amendment excessive force claims. The concession was clearly correct. After dismissing the substantive due process claim against Beaird, the district court exercised its discretion to dismiss White's state law counterclaim without prejudice. See 28 U.S.C. § 1367(c)(3). When we reinstate the court's original federal jurisdiction by reversing the grant of summary judgment and remanding for further proceedings on the federal excessive force claims, our proper disposition is to vacate the dismissal of the state law counterclaim under § 1367(c)(3) and "leave the question of how to handle the state claim to the District Court on remand." Int'l Ass'n of Firefighters, Local 2665 v. City of Ferguson, 283 F.3d 969, 976 (8th Cir. 2002).

## VII. Conclusion

We reverse the district court's grant of summary judgment dismissing the Fourth Amendment excessive force and state law assault and battery claims against defendants White, Beaird, and Tihen, vacate the dismissal without prejudice of White's counterclaim, and remand for further proceedings not inconsistent with this opinion. In all other respects, the rulings of the district court are affirmed.

_____