# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2387

_____

James Munson,                                  *
                                               *
            Appellant,                         *
                                               *   Appeal from the United States
      v.                                       *   District Court for the
                                               *   Eastern District of Arkansas.
Larry Norris, Director, Arkansas               *
Department of Correction; Ray Hobbs,           *   [UNPUBLISHED]
Assistant Director, Arkansas                   *
Department of Correction; P. Smith,            *
R.S.V.P. Counselor, Tucker Unit,               *
ADC; David White, Warden, Tucker               *
Unit, ADC; Max Mobley, Director,               *
R.S.V.P.  Programs, Tucker Unit,               *
ADC; Roy Dunlap, R.S.V.P                       *
Coordinator, Arkansas Department of            *
Correction; Stephen Clark, Dr.,                *
Tucker Unit, ADC (originally sued as           *
Clark),                                        *
                                               *
            Appellees.                         *

_____

Submitted: February 11, 2010
Filed:  May 3, 2010

_____

Before RILEY, Chief Judge,[1] SMITH and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

In this case, before us for a third time, James Munson appeals an adverse jury finding that he was not coerced by the appellees, officers and employees of the Arkansas Department of Corrections ("ADC"), to recite a prayer. Based on the jury's verdict, the district court[2] concluded that the appellees had not violated the Establishment Clause of the First Amendment.

As we have explained the facts and history of Munson's prior proceedings in our earlier opinions, we need not recite them in detail here. See Munson v. Norris (Munson I), 67 F. App'x 383 (8th Cir. 2003) (unpublished per curiam); Munson v. Norris (Munson II), 435 F.3d 877 (8th Cir. 2006) (per curiam). In brief, this case arises from an ADC parole condition which required Munson to attend a treatment program, the Reduction of Sexual Victimization Program ("RSVP"), for inmates who exhibited sexual deviancy. The RSVP included weekly meetings that followed "The Twelve Steps of Alcoholics Anonymous Adapted for Sexual Addicts" in their discussions. While enrolled in the RSVP, Munson refused to recite the serenity prayer at the conclusion of the group meetings. Munson was eventually terminated from the program and filed suit, alleging, among other claims, a violation of the Establishment Clause.

In Munson II we remanded, holding that the district court had "wrongly analyzed the First Amendment claim under the Free Exercise Clause instead of the Establishment Clause" and instructing the district court to "decide whether requiring Mr. Munson at the RSVP meetings to recite the serenity prayer was in violation of the Establishment Clause."[3] 435 F.3d at 880-81 (citing Warner v. Orange County Dep't

---

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[3]In Munson II, we were reviewing the district court's grant of the ADC's motion to dismiss and were required to take all the facts alleged in Munson's

-2-

of Prob., 115 F.3d 1068, 1074-76 (2d Cir. 1996); <u>Kerr v. Farrey</u>, 95 F.3d 472, 476-80 (7th Cir. 1996); <u>Griffin v. Coughlin</u>, 673 N.E.2d 98, 101-05 (N.Y. 1996)).

On remand, the district court instructed the jury to find that Munson had been coerced to recite the serenity prayer, in violation of Munson's Establishment Clause rights, if the following was proven by a preponderance of the evidence: (1) the ADC required RSVP participants to recite the serenity prayer; (2) the ADC required Munson to recite the serenity prayer; (3) the ADC punished or threatened to punish Munson for refusing to recite the serenity prayer; and (4) Munson was damaged as a result. Munson's counsel did not object to these instructions, proffer any additional instructions, or argue that the district court had not complied with our mandate in <u>Munson II</u>.

The issue now before us is whether the district court's instruction to the jury complied with our mandate and direction in <u>Munson II</u>. Munson claims that whether the district court complied with our mandate is a question of law, subject to de novo review. However, Munson's failure to raise an objection to this instruction at trial "results in a waiver of that objection, absent a showing of *plain error*." <u>Niemiec v. Union Pac. R.R.</u>, 449 F.3d 854, 857-58 (8th Cir. 2006) (emphasis added).

Under the Federal Rules of Civil Procedure, "[a] court may consider a plain error in the instructions that has not been preserved [by a proper objection under Rule

---

complaint as true. <u>See</u> <u>Zoltek Corp. v. Structural Polymer Group</u>, 592 F.3d 893, 895 (8th Cir. 2010). Therefore, the determination of whether Munson was required to recite the prayer remained a question of fact for resolution in later proceedings.

51(d)(1)[4]] if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).[5] "Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." Niemiec, 449 F.3d at 858 (quotation omitted). "'Plain error review is narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings,'" BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 (8th Cir. 2003) (quoting Chem-Trend, Inv. v. Newport Indus., Inc., 279 F.3d 625, 629 (8th Cir. 2002)), and we will "order a new trial only if the error 'misled the jury or had a probable effect on its verdict,'" Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001) (quoting E.I. du Pont de Nemours & Co. v. Berkley & Co., 620 F.2d 1247, 1257 (8th Cir. 1980)); see also Brown v. Frey, 889 F.2d 159, 169-70 (8th Cir. 1989) (finding plain error in a jury instruction where "the instruction allowed the jury to find a constitutional violation based wholly upon conduct which could not possibly violate the Constitution").[6]

---

[4]"A party may assign as error: [1] an error in an instruction actually given, if that party properly objected; or [2] a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected." Fed. R. Civ. P. 51(d)(1).

[5]"Many circuits have recognized that an error not preserved under Rule 51 may be reviewed in exceptional circumstances. The language adopted to capture these decisions in subdivision (d)(2) is borrowed from Criminal Rule 52. Although the language is the same, the context of civil litigation often differs from the context of criminal prosecution; actual application of the plain-error standard takes account of the differences." Fed. R. Civ. P. 51(d) advisory committee's note; see United States v. Atkinson, 297 U.S. 157, 160 (1936) ("In exceptional circumstances, *especially in criminal cases*, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." (emphasis added)).

[6]Munson also argues that this court should "decide as a matter of law that the RSVP program violates the Establishment Clause." (Appellant Br. 37.) This court has yet to decide an Establishment Clause case involving facts such as these—where

Regarding the first three elements of the district court's instruction, we conclude that the district court adequately complied with our mandate because determinations concerning whether (1) Munson and other RSVP participants were actually required to recite the prayer and (2) Munson was punished for refusing to recite the prayer, were necessary to the question of whether Munson's Establishment Clause rights were violated. See Lee v. Weisman, 505 U.S. 577, 587 (1992) ("It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise . . . ."); see also Kerr, 95 F.3d at 479 (finding coercion when inmates were "required" to attend a treatment program and were "subject[ed] to significant penalties" upon refusal). Moreover, our instruction to the district court in Munson II required a fact determination regarding whether the ADC actually "required" Munson to recite the prayer. In explaining the reasoning behind its instruction, the district court stated:

> I'm essentially relying on the Eighth Circuit opinion here, which says that "We instruct the district court to decide whether requiring Mr. Munson to recite the serenity prayer was a violation of the Establishment Clause." So I think it ultimately will be my decision based on the finding of the jury as to whether there was coercion or a violation of the constitutional rights. But I do think that the jury's deliberations will turn on whether he was required to do that. And in the context of this case, I think the terms [coerced and required] are probably synonymous. I mean, if he was required to do it and there was a consequence if he didn't do it, then he's been coerced into doing it. I don't think it is a question of whether the requirement was reasonable or not. I mean, it's a question of was he or was he not required to do it.

a prisoner alleges Establishment Clause violations based on a parole condition requiring attendance in a program modeled after Alcoholics Anonymous. However, our mandate instructed the district court to make this determination, see Munson II, 435 F.3d at 880-81. Therefore, the case at hand only involves the question of whether the district court adequately complied with our mandate.

(Trial Tr. vol. 2, 258-59.)  Under plain error review, we conclude that the district court's first three elements of the instruction adequately complied with our mandate.

We are, however, somewhat troubled by the element in the district court's instruction which requires a finding that Munson was "damaged."  A plaintiff must allege some form of injury to have standing for an Establishment Clause claim.  See Valley Forge Christian Coll. v. Ams United for Separation of Church & State, Inc., 454 U.S. 464, 488 (1982) (finding that "enforcement of the Establishment Clause [does not demand] special exceptions from the requirement that a plaintiff allege distinct and palpable injury to himself, that is likely to be redressed if the requested relief is granted"  (quotation omitted)); see also Patel v. United States Bureau of Prisons, 515 F.3d 807, 817 (8th Cir. 2008) ("Absent an alleged injury, Patel does not have standing for his Establishment Clause claim.").  Damages are a different legal concept than injury, and a plaintiff is entitled to damages, whether nominal or compensatory, only after it is determined that the Establishment Clause has been violated.  See Pelphrey v. Cobb County, 547 F.3d 1263, 1282 (11th Cir. 2008) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.  This Court has found that nominal damages are similarly appropriate in the context of a First Amendment violation." (quotations omitted)); Bats v. Cobb County, 495 F. Supp. 2d 1311, 1319 (N.D. Ga. 2007) ("[A] plaintiff who vindicates a right under the Establishment Clause, but does not demonstrate actual injury, is entitled to an award of nominal damages.").  Therefore, we find that combining the "damage" element with the other three elements of the instruction, without providing any definition or explanation for the term, was error.

However, based on Munson's inaction at the trial court level and his failure to provide the court with correct jury instructions, we conclude that the district court's instruction did not rise to the level of plain error.  See Swipies v. Kofka, 419 F.3d 709, 717 (8th Cir. 2005) (finding no plain error); but see Risdal v. Halford, 209 F.3d 1071, 1072 (8th Cir. 2000) (finding plain error when "the trial court was presented with the

correct instruction, but for some reason consciously rejected it and substituted an incorrect version);. In <u>Swipies</u>, we stated:

> [T]he amount of [the defendant's] inaction in this case is too much for us to brook. To correct the error, we would have to notice sua sponte that the district court did not act sua sponte to provide a jury instruction that the defendant should have provided, and then we would have to remedy the problem in the face of the defendant's *relative indifference* to it. We have an adversarial system of justice, not an inquisitorial one, and to [correct the error despite the defendant's inaction] would be to blur the line between the two systems. We decline to do so.

419 F.3d at 717 (emphasis added). Here, not only did Munson fail to object to the jury instructions when the district court inquired as to whether he had any additional or different instructions to proffer, Munson declined, exhibiting his "relative indifference" to the instruction. <u>See</u> <u>id.</u> Accordingly, despite our finding that the damage element of the instruction was in error, we cannot say that the fairness, integrity, or public reputation of the proceedings was seriously offended or that the alleged error misled the jury or had a probable effect on the verdict. <u>BBSerCo</u>, 324 F.3d at 960. Under plain error review, we conclude that the district court complied with our mandate in <u>Munson II</u> in its coercion jury instruction.

## III.

Accordingly, we affirm.

_____